# 19-0279-cv

## United States Court of Appeals

*for the*

## Second Circuit

———◆———

DOUGLAS ELLIMAN LLC,

*Plaintiff-Appellant,*

— v. —

FIREFLY ENTERTAINMENT INC., 13 MANAGEMENT LLC,
EURO TRIBECA LLC,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

MICHAEL S. COLE
COLE HANSEN CHESTER LLP
*Attorneys for Plaintiff-Appellant*
767 Third Avenue, 24th Floor
New York, New York 10017
(212) 599-1535

# <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Plaintiff-Appellant Douglas Elliman LLC certifies that for the purposes of Rule 26.1 that:

1.      Plaintiff Douglas Elliman LLC is a non-governmental, corporate party wholly owned subsidiary of Douglas Elliman Realty, LLC;

2.      Douglas Elliman Realty, LLC is a non-governmental, corporate party that is a subsidiary of DER Holdings, LLC, which has more than 10% of stock in Douglas Elliman Realty, LLC;

3.      DER Holdings, LLC is wholly owned by Vector Group, Ltd., a non-governmental, publicly held corporation.

*Page*

# TABLE OF CONTENTS

Table of Cited Authorities ............................................................ *iv*

**JURISDICTIONAL STATEMENT** .......................................... 1

**STATEMENT OF THE ISSUES** ............................................. 1

**STATEMENT OF THE CASE** ............................................... 2

**SUMMARY OF THE ARGUMENT** ...................................... 10

**THE ARGUMENT** ................................................................ 13

**Point I:**

**The Complaint contains Sufficient Plausible Facts Given All Reasonable Inferences States a Claim for Breach of Contract and Damages** ......................................................................... 13

**Point II:**

**The Complaint Pleads an Exclusive Agency Brokerage Agreement Given by the Buyer and then Breached Where Damages are measured via Objective Extrinsic Standard the Complaint Should Not Have Been Dismissed Pre-Answer: Measure of Damages is an Issue of Proof** ........................... 14

**Point III:**

**The Rule of Contract Construction Under New York Law is that where an Agreement Sets No Time Limit for Performance the Law will Impute One** .............................. 21

**Point IV:**

**There is Particularly Pled Detrimental Reliance Promissory Estoppel/Negligent Misrepresentation Separate Basis for Recovery for Liability and Damages** ................................. 23

*ii*

*Page*

**Point V:**

**Defendants-Appellees are Personally Bound to their Direct
Promise of Exclusive Agency Substituting their Personal
Liability for that of their Disclosed and Apparent Principal** .......... 25

**CONCLUSION** ............................................................................ 26

CERTIFICATE OF COMPLIANCE ............................................ 28

*Page*

## TABLE OF CITED AUTHORITIES

### TABLE OF CASES

*Ashcroft v. Iqbal*, (2009)
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 ..................................... 13

*Breslin v. Frankel*, (2d Dept 2018)
167 A.D.3d 692, 90 N.Y.S.3d 99........................................................... 21, 22

*Cooper Sq. Realty, Inc. v. A.R.S. Mgt.*, (1st Dept 1992)
181 A.D.2d 551 ..................................................................................... 11, 18

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, (2d Cir. 1995)
47 F.3d 39.............................................................................................. 23, 24

*Dubbs v. Stribling & Assoc.*, (2001)
96 N.Y.2d 337 ............................................................................................. 14

*Hirschfeld Props. v Juliano*, (1st Dept 2004)
3 A.D.3d 399 ......................................................................................... 16, 17

*Hutner v. Greene*, (2d Cir 1984)
734 F.2d 896 ..................................................................................... 11, 19, 20

*Morpheus Capital Advisors LLC v. UBS AG*, (2014)
23 N.Y.3d 528 .................................................................................. 10, 14, 15

*Rivkin v. Century 21 Teran Realty LLC*, (NY Ct App 2008)
10 N.Y.3d 344 ....................................................................................... 10, 14

*Julian J. Studley, Inc. v. Coach, Inc.*, (1st Dept 2004)
3 A.D.3d 358 .................................................................................. 10, 16, 17

*Page*

*Water St. Leasehold LLC v. Deloitte & Touche LLP*, (1st Dept 2005)
19 A.D.3d 183 ................................................................. 24

*Yellow Book of NY v. DePante*, (2d Dept 2003)
309 A.D.2d 859 ............................................................... 26

## TABLE OF STATUTES

Fed. R. App. P. 3(a) ......................................................... 1

Fed. R. App. P. 4(a) ......................................................... 1

Fed. R. Civ. P. 12(b)(6)................................................ 1, 3, 25

28 U.S.C. Section 1332(a) ............................................... 1

28 U.S.C. Section 1446..................................................... 1

## TABLE OF TREATISES

*Pattern Jury Instructions*, Section 4:31 ..................... 8, 11, 18, 19

*v*

# JURISDICTIONAL STATEMENT

This case originated in the Supreme Court New York County, removed by the defendants appellees to the Southern District of New York by notice filed in the Supreme Court, New York County, February 15, 2018 pursuant to 28 U.S.C. Section 1332(a) and 28 U.S.C. Section 1446.

Appeal is taken from the Memorandum and Order and Final Judgment of the Honorable Jesse M. Furman dated January 24, 2019 (both unreported) dismissing the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Appeal is taken as of right pursuant to Fed. R. App. P. 3(a) and 4(a).

# STATEMENT OF THE ISSUES

1.     Has the plaintiff broker pled the particulars of a real estate brokerage agreement apropos exclusive agency agreement given by the buyer.

2.     Is the exclusive agency given by the buyer recognized as a special real estate brokerage agreement under New York law.

1

3.     Has the complaint pled breach of an exclusive agency brokerage agreement given by the buyer.

4.     Is the complaint by the broker sufficient where it makes a claim for breach of an exclusive agency brokerage agreement given by the buyer which does not state commission amount but where damages are pled in the complaint per *invariable industry standard*.

5.     In the absence of proof can the court determine the measure of damages pled in the complaint is not *invariable industry standard*.

6.     Under New York law is the plaintiff broker entitled to submit proof of what a reasonable time is where the buyer omits the term from the written promise of exclusive agency given to the broker.

7.     The facts pled show separate basis for recovery on theories of detrimental reliance, promissory estoppel and negligent representation.

## STATEMENT OF THE CASE

The complaint of record makes claim for breach of contract and detrimental reliance regarding a brokerage agreement given by a buyer to a real estate broker.

2

Dismissal of the complaint was granted pre-answer pursuant to Fed. R. Civ. P. 12(b)(6).

Appeal is taken from the Memorandum and Order and Final Judgment of the Honorable Jesse M. Furman dated January 24, 2019 (both unreported).

The decision appealed dismissed the complaint pre-answer holding contrary to New York law and Second Circuit case precedent in failing to give reasonable inference to the allegations of the complaint and denying plaintiff the right to offer proof of claim.

This is a case of breach of an exclusive agency brokerage agreement given by a buyer high profile celebrity regarding purchase of residential real property through her disclosed agents who are directly liable to the plaintiff broker in this case.

The breach of the buyer's promise of exclusive agency arises from the exclusion of the plaintiff broker without notice in favor of another real estate broker paid the commission notwithstanding the promise of exclusive agency. Damages are measured as lost commission viz. the broker having been prevented in breach of promise from continuing to act as buyer's broker to completion of the transaction.

3

In this case, the purchase of the subject real property by the buyer was strictly the brainchild of the plaintiff's real estate agent. In accord with the allegations of the complaint, the buyer was looking for another condominium apartment because of the lack of indoor garage access. For this particular buyer, motivation was the imperative of security rather than that of convenience. The plaintiff's real estate agent realized the answer for the buyer was literally next door: the free-standing building adjacent to the buyer's current residence. This older, adjacent, smaller structure contained a long unused antiquated garage space. However, this property was not listed for sale by the owner. The plaintiff's real estate agent realized that if he could convince the owner, who he knew personally, to sell the adjacent building to the buyer, the buildings could be connected. This would ideally permit the buyer to remain in her current residence accessing her vehicle through a connection to the soon to be renovated indoor garage space of the adjacent building. The purchase of the adjacent building is the subject of appeal. *See* complaint paragraphs 9, 10 and 17 at Appendix pages 18-21.

As condition for the broker's representation the buyer agreed to give the broker a promise of exclusive agency: *i.e.* the exclusive right to represent the buyer on the subject purchase transaction. The exclusive agency promise further stated its intent to be shown to the owner. Therefore, in reliance the broker made the

4

introduction, showing, made measurements, provided blue prints.  Most important however, the plaintiff broker rendered to the buyer the most coveted of assets, personal knowledge, skill and ability to convince the owner to sell.  The email exclusive stating intent to be shown to the owner did as intended, the owner agreed to meet the buyer, preliminary negotiations were begun by the plaintiff broker which ultimately culminated in the sale eight months later.

Having taken the broker-agent's premier skill and coveted personal asset, the plaintiff broker was cut completely out of the transaction without notice in favor of another real estate broker who was paid the commission on sale.  *See* paragraphs 7-11, 17-25 of the complaint Appendix at pages 17-22.

The promise of exclusive agency is made in plain English via email.  The email promises to work with the plaintiff broker *solely* regarding the particularly described real property apropos "*viewing and any other needs.*"  The synonym in the dictionary for the word *solely* is the word *exclusively*.  The email also states as mentioned intent to be shown to the owner, further directs that the only contact for the broker will be defendants-appellees.  The promise of exclusive agency is made directly by the defendants-appellees Firefly and 13 Management to the broker. The subject email is an admitted writing annexed to the complaint of record as Exhibit A.  *See* Appendix at page 29.

5

Defendants-appellees Firefly and 13 Management are the high-profile buyer's acknowledged and disclosed agents. The defendants Firefly and 13 Management make no denial of the complaint nor can make denial pre-answer regarding acting as disclosed and apparent agent for the buyer when they sent the email to the plaintiff's real estate agent.

At the same time, there is no denial of conduct assuming control, directly hiring and promising exclusive agency to the plaintiff broker, not referencing their principal in any way: taking the liability for their principal. *See* complaint paragraphs 3-7, 16-18 at Appendix pages 17-18, 20-21; Exhibit A to the complaint Appendix at page 29. *See also* Argument Point V.

Pled particularly are the brokerage services rendered to the defendants-appellees in reliance on written promise of exclusive agency: introduction and showing of the property; obtaining blue prints from the owner; measuring the property; personally introducing defendants to the seller; beginning preliminary negotiations. *See* complaint at paragraphs 8-10, 17-22, Appendix pages 18-22.

The complaint moreover pleads facts showing separate basis for recovery on theories of detrimental reliance, promissory estoppel and negligent representation.

6

*See* complaint paragraphs 8-10, 28 at Appendix pages 18-19, 23: *see* Argument Point IV *infra*.

If all reasonable inferences are fairly given the allegations of the complaint the claim for liability and damages are pled against defendants-appellees.

Nonetheless, the decision appealed questions whether the exclusive agency brokerage agreement is no more than *agreement to agree*: As though the email promise of sole representation to the broker was not about prospective purchase of particular real property. And as though a written promise of sole representation regarding purchase of particular real property given a real estate broker was not a recognized enforceable special brokerage agreement under New York law. *See* Argument Point II *infra*.

Context for the exclusive agency email is also pled in the complaint. The complaint details the pre-existing relationship between plaintiff broker and buyer, the buyer having just been shown by the plaintiff broker a different property for prospective purchase. *I.e.* the subject email Exhibit A to the complaint sent to the broker can only be about prospective purchase of the real property subject of the exclusive agency promise. *See* complaint paragraph 16 Appendix at page 20. *See* Exhibit A to the complaint at Appendix page 29.

7

The decision appealed, however, finds the buyer's email promise of exclusive agency not enforceable in that the buyer does not recite in the email the *essential terms* commission amount and period of time. The district court holds particularly commission amount is *sine qua non* – essential term of a real estate brokerage agreement. The lead New York case briefed by the parties below cited in the decision appealed however holds differently. It holds that commission amount is an essential term but not an absolute bar to suit. *I.e.* the plaintiff real estate broker can sue for breach of a brokerage agreement missing a commission amount where damages pled are per *invariable industry standard* which plaintiff pleads in this complaint. The measure of damages language used in this complaint is reflected in the case law and in the *New York Pattern Jury Instructions*. *See* Argument Point II *infra*.

In the complaint of record the damages are particularly pled to be lost commission caused by the breach. The lost commission amount is pled to be six percent of the purchase price. The purchase price is pled as a sum certain. The six percent commission is in turn pled to be the *customary* real estate brokerage commission paid on like sale of like high end real property in the subject location. *See* complaint paragraphs 13, 14, 30 and 31 at Appendix pages 19-20, 24.

8

The Second Circuit has held applying New York law in circumstances such as pled here that plaintiff is entitled to offer proof to show the measure of damages pled are *invariable industry standard* before the matter can be determined against the plaintiff.  *See* Argument Point II *infra*.

The district court nonetheless concludes pre-answer that the pled measure of damages is no more than *subjective assessment*.  *See* the district court decision page four, Appendix bottom of page 81-82.  The peremptory determination denies any opportunity for the plaintiff to offer proof the pled measure of damages is *invariable industry standard* contrary to case precedent in this Court discussed in detail infra.  *See also* Argument Point II *infra*.

Finally, as also above mentioned, whereas the buyer left out the period of time from the buyer's promise of exclusive agency New York law permits the plaintiff broker to offer proof of what a reasonable time would be for buyer's exclusive agency and also whether such reasonable time encompassed the purchase transaction.  Both of which the plaintiff broker can prove in its favor if given opportunity.  *See* Argument Point III *infra*.

On this appeal, it will be shown that the plaintiff states a prima facie claim of liability and damages against the defendants-appellees.  And on issues of the

9

measure of damages and imputed reasonable time the plaintiff has the right to offer proof. The district court decision dismissing the complaint pre-answer should be reversed and the complaint reinstated.

## SUMMARY OF THE ARGUMENT

A promise of buyer's exclusive agency is a form of special brokerage agreement recognized under New York law. As a separate recognized brokerage agreement under New York law the buyer's exclusive agency is referenced in the New York court of appeals case *Rivkin v. Century 21 Teran Realty LLC*, (2008), 10 N.Y.3d 344, 352-354. The buyer's exclusive agency is further referenced and defined in relation to an exclusive sales agreement given by a seller in the New York court of appeals case, *Morpheus Capital Advisors LLC v. UBS AG*, (2014), 23 N.Y.3d 528, 534-535. *See* Argument Point II *infra*.

*Julian J. Studley, Inc. v. Coach, Inc.*, 3 A.D.3d 358, 359 (Appellate Division First Department 2004): holds the theory of the complaint legally viable. *I.e.* the pled theory viz. *but for* the broker being prevented from continuing to act as broker would have earned the commission, this is held sufficient statement of claim. *See* Argument Point II *infra*.

10

Relevant on measure of damages claimed as lost commission, is the New York lead case briefed by the parties below, cited in the decision appealed, *Cooper Square Realty, Inc. v. A.R.S. Mgt.*, (Appellate Division First Department 1992) 181 A.D.2d 551. In *Cooper Square*, the appellate division first department held that if a brokerage agreement does not contain a commission amount, normally considered an essential term, the complaint must plead *invariable industry standard* as basis for damage calculation. The appellant pleads such measure of damages in language recognized in the case law and *New York Pattern Jury Instructions* discussed in detail below. *See* Argument Point II *infra*.

Further to the point as touched on above is the Second Circuit case cited in *Cooper Square* as authority: *Hutner v. Greene*, (Second Circuit 1984), 734 F.2d 896. *Hutner* illustrates that where commission amount is absent from a brokerage agreement the plaintiff has right to offer proof on the measure of damages if pled to be invariable industry standard. Though the Court in *Hutner* ultimately dismissed the complaint this was on summary judgment upon finding plaintiff's expert affidavit insufficient evidence of *invariable industry standard*. The point being the plaintiff in *Hutner* was given opportunity to offer proof of the measure of damages before the issue was decided by the district court. *See*, *Hutner v. Greene* 734 F.2d at 900. *See* Argument Point II *infra*.

11

In this case, moreover, the buyer omits from the email promise of exclusive agency sent to the broker the time period for the buyer's promised exclusive agency. New York law holds that where there is no explicit time limit for performance of an agreement it will be imputed. *I.e.* the agreement remains enforceable contra the holding in the decision appealed. The plaintiff is thus entitled to offer proof of reasonable time and proof this time encompassed the subject transaction. The plaintiff broker can offer good proof on both issues. *See* Argument Point III *infra*.

The complaint particularly pleads facts showing separate right to recovery on theories of detrimental reliance, promissory estoppel and negligent representation: *i.e.* facts pled showing reasonable reliance on a false written representation made to a party's detriment resulting in damages. Therefore proof of the facts pled in the complaint establishes separate basis for recovery: *See* Argument Point IV *infra*.

The decision appealed is in material error making determination pre-answer the complaint does not state a claim for liability and damages denying opportunity to offer proof in support. The decision appealed should be reversed and the complaint reinstated.

12

# THE ARGUMENT

## Point I:

### The Complaint contains Sufficient Plausible Facts
### Given All Reasonable Inferences
### States a Claim for Breach of Contract and Damages

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, (2009) 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868. A claim is facially plausible where plaintiff pleads sufficient facts allowing the court to draw reasonable inferences that the defendant is liable. *Id.* at 678.

The allegations of the complaint in this case state that the plaintiff real estate broker was given a promise of exclusive agency by the buyer regarding purchase of particular real property. The buyer giving the broker a promise of exclusive agency is completely plausible. The purchase transaction was completely the idea of the broker-agent. Moreover, the broker knew the owner personally. The broker could and did convince the owner to sell. The buyer had every reason to give plaintiff's broker-agent a promise of exclusive agency for the purchase of the described real property. The email promise speaks for itself regarding the promise of sole representation given the broker. Equally plausible are the allegations of substantial brokerage services rendered by the broker in reliance on the email

13

promise of exclusive agency.  Undenied are the facts of the breach in the complete

exclusion of the plaintiff broker in favor of another real estate broker who was paid

the commission on sale.  All reasonable inferences favor a statement of claim for

breach of agreement and liability by defendants-appellees.

The standard of review for this point is de novo in application of law

regarding whether plausible facts are alleged in the complaint upon which

reasonable inference shows the liability of the defendants-appellees.

**Point II:**

**The Complaint Pleads an Exclusive Agency Brokerage Agreement
Given by the Buyer and then Breached
Where Damages are measured via Objective Extrinsic Standard
the Complaint Should Not Have Been Dismissed Pre-Answer:
Measure of Damages is an Issue of Proof**

Mentioned above is *Rivkin v. Century 21 Teran Realty*, (New York Court of

Appeals 2008), (a decision on certified question from the Second Circuit regarding

fiduciary duties owed by the buyer's broker), *supra*, 10 N.Y.3d 344.  In *Rivkin*, the

New York court of appeals quoting its earlier decision *Dubbs v. Stribling & Assoc.*,

(2001), 96 N.Y.2d 337 states generally that a buyer's exclusive agency agreement

is one where the real estate broker solely represents the buyer.  In *Morpheus*

14

*Capital Advisors LLC v. UBS AG*, (2014), *supra*, 23 N.Y.3d 528, 534-535, an

exclusive right of sale is differentiated from an exclusive agency. An exclusive

right of sale given by seller is an agreement where the seller must negotiate only

through the exclusive broker. The exclusive agency, on the other hand, permits

seller and buyer to negotiate without the broker however another broker is

precluded. *I.e.* the exclusive agency agreement precludes another *agency* from

negotiating the transaction. Here the exclusive agency agreement permits the

buyer to negotiate the purchase without the plaintiff broker but only if there is no

other broker on the transaction. The complaint pleads the plaintiff broker was

wrongfully excluded from the transaction by the buyer without notice and that

another real estate broker negotiated the transaction and was paid the brokerage

commission. These allegations state a claim for breach of the exclusive agency

agreement and for damages. *See* complaint paragraphs 11- 33, Appendix at pages

19-24.

Moreover, the district court misses the relevant distinction between the

exclusive right of sale given by a seller and an exclusive agency agreement given

by a buyer. *I.e.* at top of page four of the decision appealed (Appendix page 81)

the district court cites *Morpheus Capital Advisors supra* in reference to *exclusive*

*right of sale*. The decision appealed references how in the exclusive right of sale

15

commission amount is an *essential term* of the brokerage agreement: the district court concludes the same should apply to the brokerage agreement here. The exclusive right of sale given by the seller, however, is different from an exclusive agency given by the buyer. In an exclusive right of sale given by the seller, commission amount is most certainly an essential term because the seller pays the commission. It is a well-known custom and practice that the seller pays the commission on sale of residential real property. In an exclusive agency agreement given by the buyer, the commission amount is not an essential term because the buyer is not paying the commission. Hence it was not contained in the buyer's email to the plaintiff broker promising exclusive agency because the buyer was not paying the commission. It is error by the district court to appear to hold commission amount as a matter of law is a required essential term in a buyer's exclusive agency agreement. That term would not necessarily be included in the ordinary course.

In fact, all of the cases cited in the decision appealed, save one, concern exclusive right of sale given by a seller rather than exclusive agency given by a buyer. The lone exception is *Hirschfeld Properties v. Juliano*, (First Department 2004), 3 A.D.3d 399 which involved a brokerage agreement between a broker and a commercial tenant. Quoting the Appellate Division, First Department from the

16

three-paragraph memorandum decision in *Hirschfeld*: *plaintiff did nothing more than submit two pieces of paper to defendants with respect to space that defendants were already discussing with the landlord*.

*Julian J. Studley, Inc. v. Coach, Inc.*, *supra*, 3 A.D.3d 358, 359 (Appellate Division First Department 2004), also mentioned briefly above shows the viability of the theory of the complaint on breach of contract viz. *but for* the broker being prevented from continuing to act as broker would have earned the commission. In *Studley* the broker got further along in negotiations before being excluded. The theory of liability nonetheless applies otherwise defendants can simply exonerate themselves by committing breach of contract sooner. Here, the plaintiff broker was excluded from the transaction right after rendering brokerage services and introduction to the owner, commencement of preliminary negotiations.

Conversely, is the consideration given the buyer before being excluded from the transaction. Foremost is the broker's creative acumen in perceiving the unlisted adjacent building as solution to the buyer's need to move. There is the advantage given the buyer in the broker knowing the seller personally. Then the personal introduction of the seller to the buyer: initiation of negotiation on real property not otherwise on the market for sale. Finally, is the formal introduction to the physical property, the showing, measurement and blue prints rendered to the

17

buyer by the broker. The foregoing consideration is given in reliance on the buyer's written promise of exclusive agency. *See* paragraphs 8-10, 17-22 of the complaint Appendix at pages 18-22.

On measure of damages is the lead case *Cooper Square Realty, Inc. v. A.R.S. Mgt.*, (Appellate Division First Dept. 1992) *supra* 181 A.D.2d 551. This case shows viability of a claim where commission amount is absent from the brokerage agreement. That is, where damages can be objectively and extrinsically calculated by the court. Though *Cooper Square* found the brokerage agreement pled in that case no more than *agreement to agree* this was so because the complaint failed to plead specific damages (commission claimed due) either per brokerage agreement or per "objective extrinsic measure" such as via *custom and usage*. In this case, there is objective measure of damages pled per *customary commission rate*. *See* complaint paragraphs 13, 14, 30, and 31 Appendix at pages 19-20, 24.

Mentioned above as relevant is *New York Pattern Jury Instructions* Section 4:31, though regarding claim by the broker as *procuring cause* rather than breach of contract, nonetheless applicable is the self-explanatory language appearing in the last paragraph of the charge:

18

"If, however, you find that the parties did not agree to a

specific commission, then the commission would be the

reasonable value of services performed by AB. In

deciding what the reasonable value of those services is,

you may consider the testimony of the expert witness

regarding the customary rates but you are not bound by

the testimony. It is for you to fix the value of the

services at such amount as you consider fair and

reasonable under all of the circumstances."

The charge shows the measure of damages articulated to the jury where there is no commission amount stated in the brokerage agreement similar to the language in the complaint. *I.e.* the charge states one of the standards of measure the jury may consider for reasonable value of commission amount in absence of the term in the brokerage agreement is per *customary commission rate*. The complaint of record expressly pleads measure of damages per customary commission rate. *See* complaint paragraphs 13 14, 30, and 31 at Appendix pages 19-20, 24.

The charge also states the jury may consider expert testimony in deciding customary commission rate. This reflects the Second Circuit holding in *Hutner v.*

19

*Greene*, *supra*, (2nd. Cir.1984), 734 F.2d 896, 900: where, the Second Circuit ruled on a decision of the district court which found the custom and usage evidence submitted by plaintiff to prove damages (commission due) was not *invariable industry standard*. The Second Circuit in *Hutner* affirmed the district court on the evidence submitted as insufficient. This evidence consisted of an affidavit of a proffered expert stating a certain formula for measuring damages was averred to be *often used* as the customary rate of commission. The Second Circuit affirming the district court held under New York law measure of damages per custom and usage evidence must be *fixed and invariable* industry standard not merely an *often used* standard. The point again is that only after receipt of proof was this issue of the measure of damages properly determined by district court then affirmed on appeal.

In this case, the plaintiff real estate broker should likewise be given opportunity as in *Hutner* to prove the measure of damages. Unlike *Hutner*, the plaintiff broker has good proof to offer in support of the measure of damages. The issue should not be determined pre-answer as the district court does in the decision appealed.

In essence, the complaint pleads an exclusive agency agreement given by the buyer and then breached: damages are pled as lost commission measured per

20

recognized objective invariable industry standard.  The complaint should not have been dismissed pre-answer in absence of the receipt of proof.

The standard of review for this point is de novo regarding application of New York law on whether there is pled an exclusive agency brokerage agreement which has been breached and whether plaintiff has the right to offer proof on the pled measure of damages.

**Point III:**

**The Rule of Contract Construction
Under New York Law is that where an Agreement
Sets No Time Limit for Performance
the Law will Impute One**

In *Breslin v. Frankel*, (2d Dept 2018), 167 A.D.3d 692, 90 N.Y.S.3d 99: the court states the New York principle of law as Point III above recites it.  The facts in *Breslin* are as follows: the subject agreement was an option to purchase real property exercised nineteen years later.  The option agreement however contained no time limit for option exercise.  The court stated the New York legal principle of contract construction that where an agreement sets no explicit time limit for performance the law will imply a reasonable time, however a nineteen year delay was held unreasonable on its face.  Unlike *Breslin*, a *reasonable period of time* for

21

the buyer's promise of exclusive agency can be proven encompassing the subject transaction. There is no unreasonableness on its face here.

Further to this point the district court cites the fact the closing occurred *eight months later*. *I.e.* eight months later meaning the sale closed eight months after the plaintiff broker was excluded from the transaction. Implicit in the district court's reference is that the purchase transaction was possibly a separate deal or implying a substantial gap in negotiations. However, on the pled facts reasonable inference favors the opposite. The complaint pleads the complexity of the subject transaction which required the connection of the adjacent building through a common entrance (condo board approval likely needed). *See* the complaint at paragraph 10 at Appendix pages 18-19.

The reasonable inference given the complexity of the deal is that eight months is relatively quick to close. Reasonable inference favors that the negotiations were continuous and would reasonably encompass the purchase transaction. Application of the rule in *Breslin* necessarily gives the plaintiff broker the right to offer proof of reasonable time where the buyer omitted the term from the buyer's own promise of exclusive agency.

The standard of review for this point is de novo regarding whether New York law imputes a reasonable time where the agreement between the parties sets no explicit time limit for performance and whether proof may be offered on the issue.

**Point IV:**

**There is Particularly Pled Detrimental Reliance
Promissory Estoppel/Negligent Misrepresentation
Separate Basis for Recovery for Liability and Damages**

In, *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, (2d Cir. 1995) *supra*, 47 F.3d 39, the Second Circuit found promissory estoppel a separate basis for recovery as stated in the complaint. *Cyberchron* is a case about commercial conduct held to be unconscionable where the plaintiff was promised a lucrative order by defendants then pressured to increase production at significant expense then abruptly terminated in favor of another supplier. The Second Circuit held there was separate basis for recovery on theory of promissory estoppel defined as: (1) clear and unambiguous promise, (2) reasonable and foreseeable reliance, (3) unconscionable injury. Moreover, the Second Circuit in *Cyberchron* made the point that application of promissory estoppel was not limited to narrow categories. *Id.* 47 F.3d at 45.

23

Here the conduct of the defendants-appellees Firefly and 13 Management is no less commercially unconscionable and even more so as it is more direct than in *Cyberchron*. *I.e.* consider the benefits personally given by the plaintiff's broker-agent in reliance on the written promise of exclusive agency: benefit of creative acumen in visualizing the transaction, benefit to the buyer in the broker-agent personally knowing the owner, enormous benefit conveyed in the broker-agent convincing the owner to sell, initiation of preliminary negotiations. Finally, benefit of the introduction, showing, blue prints, measurements taken: all together rendered in reliance on the written promise of exclusive agency. Whether this benefit was bestowed over two weeks or two months the material benefit given is intrinsic and self-evident. The plaintiff broker is then abruptly excluded without notice in favor of another real estate broker who was paid the commission. The same elements of promissory estoppel recited above are present here. Defendants-appellees Firefly and 13 Management should likewise be estopped from denying their liability for breach of their written promise of exclusive agency made to the plaintiff broker.

Material also is *Water St. Leasehold LLC v. Deloitte & Touche LLP*, (1st Dept 2005), 19 A.D.3d 183, though the decision was not favorable to the plaintiff there, the decision stated the legal principle apropos where misrepresentation

24

causes detrimental reliance, inducing engagement in a transaction and loss, a claim is stated for both liability and damages.

The standard of review for this point is de novo regarding whether there is separately pled a claim for relief on grounds of detrimental reliance or promissory estoppel, negligent misrepresentation per complaint paragraphs 8, 18-22 and 28 Appendix at pages 18, 21-23.

### Point V:

### Defendants-Appellees are Personally Bound to their Direct Promise of Exclusive Agency Substituting their Personal Liability for that of their Disclosed and Apparent Principal

Defendants-appellees Firefly and 13 Management having not yet answered on personal liability having also not moved on lack of personal liability in their 12(b)(6) motion subject of appeal: still the issue of their personal liability should be addressed.

By conduct, assuming complete control in hiring the broker, directly promising exclusive agency in writing to the broker, solely in receipt of benefit from the broker, directing they are to be sole line of communication with the

25

broker, not otherwise referencing their principal: shows clear and explicit intent to accept liability in place of their principal concerning the plaintiff broker.

Under New York law, an agent of a disclosed principal is generally not personally liable unless there is clear and explicit evidence showing the agent intended to substitute his or her personal liability for that of the principal as defendants- appellees Firefly and 13 Management do here. *See Yellow Book of NY, LP v. DePante* (2d Dept 2003), 309 A.D.2d 859.

The standard of review for this point as it may bear is de novo pursuant to New York law whether defendant-appellees manifested clear intent by conduct and writing  accepting personal liability to the plaintiff broker in substitute for the liability of their principal.

## CONCLUSION

This complaint was brought in the Supreme Court New York County where it stated a cause of action and claim for damages under New York law: it must necessarily state a claim for relief in the District Court.  Relevant Second Circuit and New York case law show plaintiff entitled to offer proof of the claim as pled. The decision appealed is in error dismissing the complaint pre-answer.

26

Dated:     February 28, 2019

Respectfully submitted,

/s/ Michael S. Cole
COLE HANSEN CHESTER LLP
Attorneys for Plaintiff-Appellant
767 Third Avenue – 24th Floor
New York, New York  10017
Telephone:  (212) 599-1535

27

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

1.      This document complies with Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,296 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point font size, using Times New Roman font.

Dated:        February 28, 2019

> /s/ Michael S. Cole
> COLE HANSEN CHESTER LLP
> Attorneys for Plaintiff-Appellant
> 767 Third Avenue – 24th Floor
> New York, New York  10017
> Telephone: (212) 599-1535

28